**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

CARLTON M. JAMES,

                Plaintiff,                      No. 9:17-CV-1145
                                                          (MAD/CFH)

      v.

A. DOTY, et al.,

                Defendants.

---

**APPEARANCES:**                               **OF COUNSEL:**

Carlton M. James
13-A-4356
Great Meadows Correctional Facility
Box 51
Comstock, New York 12821
Plaintiff pro se

Attorney General for the                       ERIK BOULE PINSONNAULT, ESQ.
    State of New York                              Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Carlton M. James ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

corrections officer ("C.O.") A. Doty, C.O. Vincent Leone, C.O. D. Kavanaugh, C.O. S. Wiggins, Sergeant ("Sgt.") Kierpiec, Lieutenant ("Lt.") S. Martin, and Lt. Carter – who, at all relevant times, were employed at Marcy Correctional Facility ("Marcy") – violated his constitutional rights under the First and Eighth Amendments. See Dkt. No. 1 ("Compl."). Presently pending before the Court is defendants' Combined Motion for Summary Judgment and for Dismissal pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 23. Plaintiff opposed defendants' motion, and defendants filed a reply. Dkt. Nos. 31, 33. Plaintiff therein filed a supplemental response in opposition to defendants' motion. Dkt. No. 36. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II.A.1. infra. Plaintiff contends that on July 20, 2017, C.O. Kavanaugh, under the guidance of C.O. Doty, pat frisked him, while handcuffed. Compl. at 6. The officer groped plaintiff's testicles and inappropriately touched him. Id. When plaintiff complained to the officers of the inappropriate touching, they harassed him. Id. Plaintiff attempted to inform Sgt. Kierpiec of the inappropriate pat frisk, but C.O. Leone blocked him. Id. The officers escorted plaintiff to his cell. Id. Plaintiff again attempted to complain to Sgt. Kierpiec as to why "this officer Wiggins belly on my back," but the officers told plaintiff to return to his cell. Id. Plaintiff contends that an unnamed officer hit him in

2

the head, and he "tumble[d] to the floor . . . in full restraint in cuffs and [a] waist chain." Id. While plaintiff was on the floor, C.O. Kavanaugh, C.O. Leon, C.O. Doty, and Lt. Martin "pummel[ed]" him. Id. C.O. Wiggins kicked plaintiff in his left eye, which remained swollen shut for two weeks. Id. Plaintiff contends that he has numbness on the left side of his face, and "feel[s] a sharp pain" at his left temple. Id. He claims that his vision in his left cornea is sensitive to light, and that he "see[s] spots." Id. Plaintiff contends that he exhausted his administrative remedies. Id.

### B. Defendants' Recitation of the Facts

In support of their motion, defendants filed a Statement of Material Facts.[2] Plaintiff alleges that on July 20, 2017, he was assaulted by several defendants outside of his cell, and other defendants failed to intervene in that assault. Dkt. No. 23-3 ¶ 3. Plaintiff was

---

[2] Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

3

incarcerated at the Residential Mental Health Unit ("RMHU") at Marcy from May 17, 2017 through January 2, 2018. Id. ¶ 5. Plaintiff contends that the assault was, in part, retaliation for his protected activity. Id. Plaintiff's claims of excessive force, failure to intervene, and retaliation are proper subjects for a grievance under DOCCS grievance procedures. Id. ¶ 4. Plaintiff did not file any grievances while housed at Marcy's RMHU. Id. ¶ 9. While confined at Marcy's RMHU, plaintiff had full access to the Central Officer Review Committee ("CORC") in order to appeal from any facility-level grievance determination. Id. ¶ 10.

After he left Marcy's RMHU, plaintiff was housed at the RMHU at Five Points Correctional Facility ("Five Points") from January 4, 2018 until, at least, March 29, 2018. Dkt. No. 23-3 ¶ 11. While at Five Points' RMHU, plaintiff had full access to CORC to appeal from any facility-level grievance determinations. Id. ¶ 12. Plaintiff did not appeal any grievances to CORC on or before March 29, 2018 – the date he commenced this action. Id. ¶ 13.

## II. Discussion[3]

### A. Legal Standards

#### 1. Motion to Dismiss

Under Rule 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When

---

[3] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

4

considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se*

5

> litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff, 537 F.3d at 191-92 ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.") (internal citations omitted).

### 2. Motion for Summary Judgment

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences

6

against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. See id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

As with motions under Fed. R. Civ. P. 12(b)(6), where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman, 470 F.3d at 477.

### B. Exhaustion

Defendants argue that plaintiff failed to exhaust his administrative remedies before commencing this action. See Dkt. No. 23-1 ("Def. Mem. of Law") at 7-11. Plaintiff contends that he exhausted his administrative remedies. See Dkt. No. 31 ("Pl. Opp.") at 5. 6, 7, 8, 11, 15, 18-19, 20. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion

7

requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[4]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where

---

[4] In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S. Ct. at 1858-59).

administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?[5]

In support of their motion, defendants proffer the declarations of Marcy Inmate Grievance Program ("IGP") Supervisor Erin Pfendler and Assistant Director of DOCCS IGP Rachael Seguin. See Dkt. Nos. 23-4 ("Seguin Decl."), 23-5 ("Pfendler Decl."). Both Ms. Pfendler and Ms. Seguin declared that plaintiff did not file any grievances while housed at Marcy's RMHU from May 17, 2017 through January 2, 2018. See Pfendler Decl. ¶¶ 11-12,

---

[5] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

19; Seguin Decl. ¶¶ 10, 13, at 8-9 (providing DOCCS' records demonstrating that plaintiff failed to file grievances while in DOCCS' custody). Further, there is no indication in the record that plaintiff filed a grievance while housed at Five Points. See Seguin Decl. at 8. In opposition, plaintiff admits that he is "very familiar with [the] grievance procedure." Pl. Opp. at 7. Moreover, plaintiff proffers forty-five pages of exhibits in support of his argument that he exhausted his administrative remedies. See Dkt. No. 31-1. As defendants note, a majority of plaintiff's proffered documents do not pertain to the underlying issues in this action. See Dkt. No. 33 ("Def. Reply") at 3-4; Dkt. No. 31-1 at 1, 19, 20, 26, 27-31, 41.[6] To the extent that plaintiff offers what he describes as "carbon copies" of his grievances concerning the underlying claims, the documents, dated July 27, 2017, do not contain plaintiff's name, DIN number, or other identifying information that would alert Marcy IGP officials as to who drafted the grievance. See Dkt. No. 31-1 at 22-25. It is well-settled that state regulations mandate that an inmate provide his or her name and other identifying information when submitting a grievance. See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(2) ("In addition to the grievant's name, department identification number, housing unit, program assignment, etc., the grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, i.e., specific persons/areas contacted and responses received."); see also Ortiz v. Kerbein, No. 05-CV-6486L, 2007 WL 1040019, at *2 (W.D.N.Y. Apr. 4, 2007) ("Thus, the regulations require the grievance to contain the grievant's name and

---

[6] Insofar as plaintiff proffers the Use of Force Report and the injury report relating to the July 20, 2017 alleged excessive use of force, as defendants acknowledge, although these documents may be relevant to the merits of the case, they do not address whether plaintiff exhausted his administrative remedies as to those claims. See Dkt. No. 31-1 at 27-31; Def. Reply at 33.

10

other identifying information, and to identify specific persons contacted about the subject of the grievance . . . ."). Thus, even assuming that plaintiff submitted these grievances to the Marcy Inmate Grievance Resolution Committee ("IGRC"), they would not constitute proper exhaustion pursuant to state regulations and DOCCS' directives because they do not contain proper identifying information. See id.; see also Dkt. No. 33-1 ("Pfendler Reply") ¶¶ 4-5.

Plaintiff also proffers a letter to "Superintendent J. Thomas," dated July 28, 2017, that states that on July 27, 2017, plaintiff "put in a grievance to [the] grievance department for excessive use of force," but did "not witness it being place[d] in the box." Dkt No. 31-1 at 7. Plaintiff's conclusory allegations fail to indicate to whom he handed the July 27, 2017 grievance, nor do they establish that the unnamed corrections officer discarded or otherwise tampered with the filing of the grievance. "Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the [Inmate Grievance Program]." Belile v. Griffin, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *8 (N.D.N.Y. Feb. 12, 2013), report and recommendation adopted by, 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013).

Even if the undersigned were to assume that plaintiff attempted to submit a grievance regarding the alleged July 20, 2017 excessive use of force, but that a corrections officer failed to "place [the grievance] in the box," plaintiff's claims still must fail. It is well-settled that where an inmate does not receive a response to a grievance, the inmate

11

must appeal to the next level of review notwithstanding a lack of response at any level of review. See Khudan v. Lee, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's complaint where the plaintiff failed to appeal to the next level of review after failing to receive a response to his filed grievance). Thus, even if an inmate suspects that his grievances were discarded, he or she must still appeal the grievance despite the lack of response. See Chiarappa v. Meyers, No. 09-CV-607, 2013 WL 6328478, at *5 ( W.D.N.Y. Dec. 5, 2013) ("[E]ven if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process."). Plaintiff does not suggest, and the record does not demonstrate, that plaintiff appealed the non-response to CORC; in fact, Ms. Seguin declared that plaintiff failed to appeal any grievances to CORC during his incarceration. Seguin Decl. ¶ 13. Thus, because plaintiff failed to appeal the alleged non-response to the next level, he cannot be excused from the grievance process. See Heyliger v. Gebler, 624 F. App'x 780, 782 (2d Cir. 2015) (summary order) ("Under the regulations . . . , if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ] to the next step.'") (quoting N.Y. COMP. CODES R. & REGS. tit. 7, § 701.6(g)(2) (2015)).

To the extent that plaintiff suggests that his informal complaints to the Office of Special Investigations, "Risk Management," the Justice Center, his therapist, and other personnel constitute proper exhaustion, see Pl. Opp. at 6, 18-19, 20, the undersigned finds that plaintiff's argument is misplaced. It is well-established in the Second Circuit that any

12

informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements. See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007); Day v. Chaplin, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures."). Thus, because these letters were sent to officials outside the grievance chain of command, they do not satisfy the exhaustion requirement.

Finally, to the extent that plaintiff's statement that the "Marcy R.M.H.U. is located in a building that is separated from Marcy medium population" may be interpreted as suggesting that the grievance procedure was unavailable to him, see Pl. Opp. at 7, the undersigned declines to accept this interpretation. Ms. Pfendler declared that an inmate housed in RMHU may file a grievance by either (1) handing the grievance to a corrections officer sergeant, lieutenant, or captain for delivery to the grievance office, or (2) handing the grievance to her when she performed her weekly walk through RMHU. Pfendler Decl. ¶ 16. Ms. Pfendler further declared that plaintiff did not submit or attempt to submit a grievance regarding the alleged July 20, 2017 incident. Pfendler Decl. ¶¶ 18-20; Pfendler Reply ¶ 13. Plaintiff does not proffer evidence, other than his conclusory allegations, that this alleged separation in buildings prevented him from filing grievances. As such, to the extent that plaintiff's statement may be interpreted as suggesting that the grievance procedure was unavailable, the undersigned rejects this argument.

As plaintiff has not provided evidence of exhaustion, the undersigned concludes that plaintiff failed to exhaust his administrative remedies. "Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint

13

without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint." Brown v. Napoli, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); see also Morales v. Mackalm, 278 F.3d 126, 128 (2d Cir. 2002) (dismissal for failure to exhaust should be without prejudice to refiling following exhaustion). "This is so even when the issue is decided on a motion for summary judgment." Mateo v. Corebine, No. 09-CV-4811, 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010) (collecting cases). Moreover, "[w]here a plaintiff may cure the defect by pursuing administrative procedures to their conclusion and then reinstituting [his or her] suit, dismissal without prejudice is appropriate." Greene v. Desousa, No. 14-CV-6290 (SJF) (AYS), 2016 WL 3460376, at *3 (E.D.N.Y. June 21, 2016) (citations omitted). Notwithstanding, "where the inmate can no longer exhaust administrative remedies because he or she has been transferred or is no longer in custody and had ample opportunity to exhaust prior to being released or transferred but failed to do so, dismissal with prejudice is proper." Grafton v. Hesse, No. CV 15-4790 (SJF) (GRB), 2017 WL 9487092, at *9 (E.D.N.Y. Aug. 25, 2017), report and recommendation adopted sub nom. Grafton v. Assistant Deputy Undersheriff Hesse, 2017 WL 4286266 (E.D.N.Y. Sept. 27, 2017) (citing Greene, 2016 WL 3460376, at *3) (dismissing complaint with prejudice is appropriate where plaintiff was "no longer in custody at the NCCC and she can no longer exhaust administrative remedies")).

Because the alleged incident in the underlying action occurred in 2017, plaintiff's claims are still within the applicable statute of limitations. Although the docket states that plaintiff is still in DOCCS' custody, DOCCS records indicate that plaintiff was conditionally

14

released to parole on September 18, 2018.[7] However, plaintiff has not informed the Court of his release, as is his duty.[8] Even though the record indicates that plaintiff remained incarcerated at Marcy RMHU until January 2, 2018, and was transferred to Five Points RMHU until, at least, March 29, 2018, therefore, demonstrating that he had ample opportunity to exhaust his administrative remedies, see Grafton, 2017 WL 9487092, at *9; Seguin Decl. ¶¶ 10-11, out of an abundance of caution, the undersigned recommends dismissal of plaintiff's claims without prejudice.

Accordingly, as exhaustion is a prerequisite to filing an action in federal court (Woodford, 548 U.S. at 85), it is recommended that defendants' motion be granted.

### C. State Law Claims

Defendants argue that plaintiff's state law claims of assault and battery stemming from the alleged July 20, 2017 incident should be dismissed pursuant to New York Corrections Law § 24. See Def. Mem. of Law at 12-13. The undersigned recommends dismissal of plaintiff's state law claims concerning assault and battery in light of the recommendation of dismissal of the federal claims for failure to exhaust his administrative remedies pertaining to the same set of facts. See 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to exercise supplemental jurisdiction over a claim if all other claims over which the court has original jurisdiction have been dismissed); City of Chicago

---

[7] See DOCCS LOOKUP, http://nysdoccslookup.doccs.ny.gov/ (last visited Jan 4, 2019).

[8] Plaintiff is reminded of his strict obligation to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in address, and that his failure to do so or otherwise participate in this action may result in dismissal of his case. See L.R. N.D.N.Y. 10.1(c)(1), 41.2(b).

v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994).

Even if the underlying federal cause of action survived, plaintiff's state law claims are still subject to New York Correction Law § 24. Pursuant to Correction Law § 24(1):

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. CORR. LAW § 24(1). Courts look at the following factors to determine whether a defendant's action is within the scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in the actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have reasonably anticipated.

Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted) (holding that the defendant's alleged sexual harassment was not undertaken in the discharge of his duties and beyond the protection afforded to officers under § 24).

The test to determine whether the defendants' actions fall within the scope of their employment is "whether the act was done while the servant was doing his master's work no matter how irregularly, or with what disregard of the instructions." Cruz v. New York, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) (citing Cepeda v. Coughlin, 128 A.D.2d 995, 996 (N.Y. App. Div. 1987)). Conduct that is "purely for personal reasons unrelated to the

16

employer's interests, . . . which is a substantial departure from the normal methods of performing the officer's duties is not considered within the scope of employment." Johnson v. New York State Dep't of Corr. Servs. & Cmty. Supervision, No. 11-CV-079S, 2013 WL 5347468, at *2 (W.D.N.Y. Sept. 23, 2013) (quoting Gore v. Kuhlman, 217 A.D.2d 890, 891 (N.Y. App. Div. 1995)).

Plaintiff's complaint demonstrates that defendants were on duty in the correctional facility at the time of the alleged constitutional violations, and that their alleged acts were not significant departures beyond the scope of their employment. Accordingly, the undersigned recommends dismissal of plaintiff's state law claims.[9]

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendants' combined Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 23) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, without prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation

---

[9] The undersigned notes that plaintiff's papers contain a motion to appoint counsel. See Pl. Opp. at 2-3. This motion is identical to the motion to appoint counsel plaintiff filed on June 26, 2018, which the undersigned denied without prejudice and with the opportunity to renew after the District Court rendered a decision on the pending motion for summary judgment. See Dkt. Nos. 30, 34. As such, insofar plaintiff may attempt to renew his motion to appoint counsel, plaintiff's motion is denied without prejudice. Plaintiff's opposition papers also contain a document entitled "motion to persona standi injudicio." Pl. Opp. at 12. As the undersigned recommends dismissal of plaintiff's action pursuant to his failure to exhaust his administrative remedies, plaintiff's "motion to persona standi injudicio" is also denied.

and Order on all parties in accordance with Local Rules.

    **IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[10]

Dated: January 4, 2019
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[10] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).

18